Filed 5/19/21  P. v. Curiel CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B306150 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA223606) |
| v. | |
| JOSE CURIEL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, a jury convicted Jose Curiel of first degree murder, with true findings on gang and firearm enhancements. After passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Curiel petitioned for resentencing pursuant to Penal Code section 1170.95.[1] The trial court summarily denied the petition, concluding that Curiel was ineligible because the prosecution did not rely on the natural and probable consequences doctrine or the felony-murder rule at trial, and the jury was not instructed on these theories. Curiel appeals, contending that the trial court erred by summarily denying his petition without appointing counsel. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The murder, conviction, and appeal*

In 2001, Curiel was a member of the 38th Street criminal street gang. In early April 2001, a 38th Street gang member known as "Woody" was killed near 43rd Street and Ascot Avenue in Los Angeles. The "All For Crime" (A.F.C.) gang was believed to be responsible.

On April 11, 2001, Curiel and other 38th Street gang members discussed committing a drive-by shooting, to be carried out using a stolen Chevy van.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] At Curiel's request, we have taken judicial notice of this court's records in his direct appeal, No. B177695, including our prior opinion in the case. (Evid. Code, §§ 451, 452, subd. (d), 459.) We derive the factual and procedural background in part from our prior opinion.

That evening, Marcus Byrd was sitting in his car, talking to another man about some tire rims, near the corner of Ascot Avenue and 43rd Street.  As Byrd began to drive away, the van drove up and stopped in the middle of the street, blocking Byrd's path.  One or more assailants exited the van and began shooting at Byrd's vehicle, repeatedly hitting him.  Byrd died from multiple gunshot wounds.  Eyewitness statements to police and bullet casings found at the scene suggested more than one shooter participated in the attack.

The jury found Curiel guilty of the first degree murder of Byrd (§ 187, subd. (a)), with a criminal street gang enhancement (§ 186.22, subd. (b)(1)).  It additionally found a principal in the crime personally used and discharged a firearm, proximately causing Byrd's death.  (§ 12022.53, subds. (b), (c), (d), (e)(1).)  The trial court sentenced Curiel to 50 years to life in prison.  This court affirmed the judgment in 2006.  (*People v. Curiel* (Jan. 10, 2006, B177695) [nonpub. opn.].)

2. *The section 1170.95 petition*

On March 19, 2020, Curiel filed a section 1170.95 petition, seeking resentencing on his murder conviction.  Using a preprinted form, he checked boxes stating that a charging document had been filed against him allowing the prosecution to proceed under the felony-murder rule or the natural and probable consequences doctrine; he was convicted of first or second degree murder under one of those theories; he could not now be convicted of murder in light of changes to the law made by Senate Bill 1437; he was not the actual killer, nor did he aid and abet the actual killer with the intent to kill; and he was not a major participant in the felony and did not act with reckless

3

indifference to human life.  He also requested the appointment of counsel.

On April 2, 2020, the trial court summarily denied the petition.  Curiel was not present, and was not represented by counsel.  In a memorandum of decision, the court explained: "A review of the petition and the available materials from the court file, including the jury instructions[,] reveals that the court did *not* instruct the jury on either the felony murder rule or the natural and probable consequences theory.  Rather, the jury was instructed that the intent to kill was required.  Based upon the verdict, it is clear that the jury found this intent as that was the [sole] theory underlying the prosecution."  Accordingly, the court found Curiel ineligible for relief, and denied the petition.

Curiel filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her

4

mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248; *People v. Powell* (2018) 5 Cal.5th 921, 942.) Under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Lamoureux*, at p. 248.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (See *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) he must have been convicted of first or second degree

5

murder, and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief.  (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327–330, rev.gr.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, pursuant to the natural and probable consequences doctrine or a felony-murder theory.  (*Tarkington*, *supra*, 49 Cal.App.5th at pp. 897–898, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.)  If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel.  (*Tarkington*, at pp. 898, 900–902; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, review granted June 24, 2020, S262011; *Verdugo*, at p. 332; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139–1140, review granted Mar. 18, 2020, S260598; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [under section 1170.95,

6

petitioners are entitled to appointment of counsel upon filing a facially sufficient petition].)

If, however, the petitioner's ineligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, rev.gr.; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898, rev.gr.) If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166.) At that hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

2. *Denial of the petition was proper because the record of conviction shows Curiel was ineligible as a matter of law*

To be eligible for resentencing, Curiel was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) The record of conviction conclusively demonstrates that Curiel cannot make such a showing. "[P]otential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequence doctrine or of felony murder. [Citation.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 (*Soto*), review granted Sept. 23, 2020, S263939; *People v. Lee* (2020) 49 Cal.App.5th 254, 263–265, review granted July 15, 2020, S262459.) Where the record shows, as a matter of law, that the petitioner was not tried under either of these theories, he

7

necessarily "was convicted on a theory that survives the changes to sections 188 and 189" enacted by Senate Bill 1437. (*Tarkington*, *supra*, 49 Cal.App.5th at p. 899, rev.gr.)

Curiel's jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule; therefore, he could not have been convicted based on either of these theories. (See, e.g., *Soto*, *supra*, 51 Cal.App.5th at p. 1055 [trial court may rely on jury instructions when determining whether petitioner has made a prima facie showing of entitlement to relief]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [where jury instructions showed petitioner was not convicted under felony-murder rule or natural and probable consequences theory, he could not meet the statutory prerequisites for filing a § 1170.95 petition]; *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138, rev.gr. [where court file shows petitioner was convicted of murder without instruction or argument on the felony-murder rule or the natural and probable consequences doctrine, summary denial is appropriate].)

Relying on *People v. Cooper*, *supra*, 54 Cal.App.5th 106, review granted, Curiel argues that because he filed a facially sufficient petition—that is, one in which the correct boxes were checked—section 1170.95 entitled him to the appointment of counsel. Further, he urges that a court is not authorized to examine the record of conviction until the section 1170.95, subdivision (d)(3) hearing stage. Our Supreme Court is currently considering both questions. (*People v. Lewis*, S260598.)

Pending further guidance from our Supreme Court, however, we are not persuaded by Curiel's contentions. This court, along with the majority of courts considering the issue, has

8

held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law.  (See, e.g., *Tarkington*, *supra*, 49 Cal.App.5th at pp. 901–902, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)

Likewise, numerous courts have rejected the argument that a trial court is limited to consideration of the allegations in the petition when determining whether the petitioner has made a prima facie showing of eligibility.  To the contrary, a court may consider readily ascertainable information in the record of conviction, such as the jury instructions at issue here.  (See, e.g., *People v. Palacios* (2020) 58 Cal.App.5th 845, 855–856, review granted Feb. 24, 2021, S266701; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15–16, review granted Oct. 14, 2020, S264033; *People v. Soto*, *supra*, 51 Cal.App.5th at pp. 1054–1055, rev.gr.; *Tarkington*, *supra*, 49 Cal.App.5th at pp. 899, 909, rev.gr.; *People v. Edwards*, *supra*, 48 Cal.App.5th at pp. 673–674, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138, rev.gr.)

Accordingly, because the jury instructions demonstrate that Curiel is ineligible for section 1170.95 relief as a matter of law, the trial court properly denied his petition.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

LAVIN, J., Dissenting:

For the reasons laid out in my dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted August 12, 2020, S263219, and the holding and analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted November 10, 2020, S264684, I would reverse the order and direct the trial court to conduct further proceedings in accordance with Penal Code section 1170.95.

LAVIN, J.